## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **U.S. WELL SERVICES, LLC** | § | |
| *Plaintiff,* | § | |
| | § | **CIVIL ACTION NO. _____** |
| **v.** | § | |
| | § | |
| **ACME TRUCK LINES, INC.** | § | |
| *Defendant.* | § | |

## ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff U. S. Well Services, LLC ("USWS") respectfully files this Original Complaint for Declaratory Judgment, pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201-2202, seeking a declaration from the Court that ACME Truck Lines, Inc. owes contractual defense and indemnity to USWS pursuant to the Master Services Agreement ("MSA") between the parties dated April 19, 2017. USWS respectfully shows the Court as follows:

### I.
### PARTIES

1.      Plaintiff USWS is a corporation organized and existing under the laws of Texas, with its principal place of business in Texas.

2.      Defendant ACME is a corporation organized and existing under the laws of Louisiana, with its principal place of business in Louisiana.

3.      Defendant ACME is registered to do business in Texas and may be served with process by and through its registered agent for service of process: Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

## II.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this action under 28 U.S.C. §§ 2201 and 2202 insofar as USWS now seeks a declaration of its rights and obligations under the MSA at issue. Pursuant to 28 U.S.C. § 1332, complete diversity exists between the parties, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

5.     Venue is proper in this District and Division under 28 U.S.C. § 1391(b)(1) because a substantial part of the events giving rise to the claim occurred in this District and Division.

## III.

## FACTS

### THE UNDERLYING LAWSUIT AND CLAIMS

6.     This lawsuit is a contractual indemnity dispute arising out of a lawsuit filed by David Larkins in the 165th Judicial District Court of Harris County, Texas at Cause No. 2019-10006 and styled *David Larkins v. U.S Well Services, LLC, U.S. Well Services, Inc. and PACCAR, Inc.* ("the Underlying Lawsuit").

7.     In the Underlying Lawsuit, David Larkins asserts claims arising from an accident that occurred on December 2, 2018 in Brazos County, Texas while Larkins was working for ACME and driving a tractor-trailer owned by USWS. Plaintiff Larkins alleges negligence by USWS in failing to maintain, inspect and repair its vehicle that allegedly resulted in the vehicle's engine exploding and causing the vehicle to swerve off the road and drive into a ditch.

8.     USWS has responded in the Underlying Lawsuit and denied liability. Discovery is ongoing.

9.     Plaintiff in the Underlying Lawsuit has also alleged a manufacturing defect in the truck's engine, and has sued the manufacturer, PACCAR, Inc. for those alleged defects.

### THE APRIL 19, 2017 MASTER SERVICES AGREEMENT BETWEEN USWS AND ACME

10.     The April 19, 2017 MSA between USWS and ACME provides in relevant part regarding ACME's duty to defend and indemnify USWS as follows:

Section 5.0 Indemnity

5.1     It is agreed by both Company [USWS] and Contractor [ACME] certain responsibilities and liabilities for personal injuries, bodily injuries, death and property damage arising from the performance of this Agreement should be allocated between them in order to avoid protracted litigation.

*     *     *

5.2     Definitions

*     *     *

b.     "CONTRACTOR GROUP" shall mean, individually, and in any combination, Contractor, its . . . employees and invitees.

*     *     *

f.     **"REGARDLESS OF FAULT"** SHALL MEAN WITHOUT REGARD TO THE CAUSE(S) THEREOF INCLUDING, WITHOUT LIMITATION . . . THE NEGLIGENCE OF FAULT OF ANY PERSON OR PARTY, EXPRESSLY INCLUDING THE INDEMNITEE [USWS] WHETHER SUCH NEGLIGENCE BE SOLE, JOINT AND/OR CONCURRENT, ACTIVE OR PASSIVE, OR ANY OTHER THEORY OF LEGAL LIABILITY, BUT EXPRESSLY NOT

INCLUDING GROSS NEGLIGENCE OR WILFULL MISCONDUCT OF THE INDEMNITEE [USWS].

5.3     Contractor [ACME] shall release, Defend, and indemnify Company Group [USWS] from and against all Losses arising in connection herewith in favor of any member of Contractor Group [USWS] on account of bodily injury, death, or damage to property, **REGARDLESS OF FAULT**."

\*     \*     \*

5.9     The release, indemnity, and defense provisions of this Agreement shall apply to any and all Services, work performed, services rendered or material supplied by [ACME] on behalf of [USWS].

*See* USWS/ACME MSA, attached hereto and incorporated by reference herein as Exhibit A at Section 5 (Bold in original).

11.     The claims by ACME employee Larkins in the Underlying Lawsuit arise out of or in connection with the work and services performed by ACME for USWS.

12.     The express terms of the MSA, in bold, and all caps, make clear that ACME has a duty to defend and indemnify USWS for Larkins's claimed injuries "**REGARDLESS OF FAULT**."

13.     USWS has demanded that ACME indemnify USWS and provide USWS a defense with respect to attorney's fees and costs incurred in connection with the Underlying Lawsuit, but ACME has failed and refused to do so.

## IV.

## REQUEST FOR DECLARATORY RELIEF

14.     Plaintiff USWS Incorporates by reference the allegations and averments contained in 1 through 13 above, as though set forth fully herein.

15.     USWS invokes this Court's power to render a declaratory judgment. As set forth above, there is an actual controversy concerning the contractual defense and indemnity available to USWS and owed by ACME.

16.     The terms of the MSA are clear and unequivocal. ACME has both a duty to defend and a duty to indemnify USWS in the Underlying  Lawsuit, but it has failed and refused to do either. Therefore, Plaintiff USWS asks that it be granted the following relief from this Court:

    A.      a declaration by the Court that the ACME owes a duty to defend and indemnify USWS under the terms of the MSA;

    B.      a declaration by the Court that ACME must reimburse USWS for defense costs incurred on behalf of USWS in the Underlying Lawsuit;

    C.      a declaration by the Court that ACME is responsible for any damages awarded against USWS as a result of the Underlying Lawsuit;

    D.      such other and further relief as the Court deems just and equitable under the circumstances.

    **WHEREFORE, PREMISES CONSIDERED**, Plaintiff USWS prays for judgment declaring the rights and obligations of the parties as set forth above, and for such other and further relief, both at law and in equity, as it may show itself justly entitled.

                                        Respectfully submitted,
                                        **LANZA LAW FIRM, PC**


                            BY:    ___/s/   *Matthew L. Witherel*_____
                                        Nicholas J. Lanza

SBN: 11941225
E-Mail: nlanza@lanzalawfirm.com
E-Service: eservice@lanzalawfirm.com
Matthew L. Witherel
SBN: 24081385
E-Mail: mwitherel@lanzalawfirm.com
E-Service: eservicel@lanzalawfirm.com
4950 Bissonnet Street
Houston, Texas 77401
Phone: (713) 432-9090
Fax: (713) 668-6417

**ATTORNEYS FOR PLAINTIFF U.S.
WELL SERVICES, LLC**

**EXHIBIT A**

2/8/2019 2:46 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 31057708
By: Miaeda Hutchinson
Filed: 2/8/2019 2:46 PM

CAUSE NO. _____

| | | |
|---|---|---|
| David Larkins | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| U.S. Well Services, Inc.; and | § | |
| U.S. Well Services, LLC | § | |
| | § | |
| *Defendant.* | § | ___th JUDICIAL DISTRICT |

<u>PLAINTIFF'S ORIGINAL PETITION</u>

Plaintiff **David Larkins** complains of **Defendants U.S. Well Services, Inc. and U.S. Well Services, LLC** (collectively, "Defendants"), and would respectfully show that:

**I.**
<u>DISCOVERY CONTROL PLAN</u>

1.      Plaintiff pleads Level 2.

**II.**
<u>JURISDICTION AND VENUE</u>

2.      The claims asserted arise under the common law of Texas.  This Court has personal jurisdiction over Defendants reside in Texas.  Venue is proper because Defendants reside in Harris County.  This case is not removable to federal court under the so-called "forum-defendant rule" because Defendants reside in Harris County, Texas.

**III.**
<u>PARTIES</u>

3.      Plaintiff is a Texas resident.

4.      Defendant **U.S. Well Services, LLC** is a foreign limited-liability company headquartered in Houston, Texas.  It may be served with process via its registered agent, **Cogency Global, Inc., 1601 Elm Street, Dallas, Texas 75201.**

5.      Defendant **U.S. Well Services, LLC** is a foreign for-profit corporation headquartered in Houston, Texas.  It may be served with process via its registered agent, **Daniel T. Layton, 2100 West Loop South, 16th Floor, Houston, Texas 77027.**.

## IV.
### FACTS

6.      This lawsuit is necessary as a result of motor-vehicle explosion that occurred on or about December 2, 2018.  On the date in question, Plaintiff was employed by Non-Party Acme Truck Line, Inc. as a driver who would drive trucks owned and/or maintained by different companies to predetermined locations.  On the date in question, Plaintiff was driving a truck owned and/or maintained by Defendant(s) U.S. Well Services, Inc. and/or U.S. Well Services, LLC near or in Bryan, Texas.  Without warning, the truck's motor blew up, causing Plaintiff to take emergent action which resulted in Plaintiff driving into a ditch.

7.      As a result of the incident, Plaintiff broke his right tibia and sustained severe injuries to his neck, back, abdominal region, and other parts of his body.  In addition, Plaintiff has suffered from mental and emotional trauma as a result of the incident.

8.      The accident at issue occurred as a direct and proximate result of Defendants' negligence, negligence *per se*, and gross negligence when Defendants:

    a.      Failed to properly maintain their vehicle;

    b.      Failed to properly inspect their vehicle;

    c.      Failed to take measures to ensure proper maintenance of their vehicle;

    d.      Failed to take measures to ensure proper inspection of their vehicle;

    e.      Failed to warn Plaintiff of hidden and/or latent dangers associated with the vehicle;

    f.      Failed to take reasonable steps to make their vehicle safe for operation;

    g.      Failed to train their employees;

    h.      Failed to supervise their employees;

    i.      Violated applicable, local, state, and federal laws and/or regulations; and

    j.      Other acts so deemed negligent.

9.     As a result of said occurrences, Plaintiff sustained severe injuries, which resulted in physical pain, mental anguish, disfigurement, and other medical problems.  Plaintiff has sustained severe pain, physical impairment, disfigurement, discomfort, mental anguish, and distress.  In all reasonable probability, Plaintiff's physical pain, physical impairment and mental anguish will continue indefinitely.  Plaintiff has also suffered a loss of earnings in the past, as well as a loss of future earning capacity.  Plaintiff has incurred and/or will incur pharmaceutical and medical expenses in connection with his injuries.

10.    Further, Defendants acted knowingly and/or recklessly, committing gross negligence.  Accordingly, Plaintiff is entitled to and seeks exemplary damages.

11.    Pursuant to Rule 47, Plaintiff seeks monetary relief within the jurisdictional limits of this Court and over $1,000,000.00.

**EXHIBIT A**

## V.
### Jury Demand

12.    Plaintiff hereby demands a trial by jury.

## VI.
### Prayer

Plaintiff prays that this citation issue and be served upon Defendants in a form and manner prescribed by law, requiring that Defendants appear and answer, and that upon final hearing, Plaintiff has judgment against Defendants, both jointly and severely, in a total sum in excess of the minimum jurisdictional limits of this Court, plus pre-judgment and post-judgment interests, all costs of Court, exemplary damages, and all such other and further relief, to which he may show himself justly entitled.

DATED: February 6, 2019

**EXHIBIT A**

Respectfully submitted,

ARNOLD & ITKIN, LLP

/s/ Ben Bireley

_____

Jason A. Itkin
Texas Bar No. 24032461
Noah M. Wexler
Texas State Bar No. 24060816
Ben Bireley
Texas State Bar No. 24076086
Rebecca L. Adams
Texas State Bar No. 24098255
Christopher Jake "Jake" Balser
Texas State Bar No. 24109155
6009 Memorial Drive
Houston, Texas 77007
Telephone: (713) 222-3800
Facsimile: (713) 222-3850
jitkin@arnolditkin.com
nwexler@arnolditkin.com
bbireley@arnolditkin.com
radams@arnolditkin.com
jbalser@arnolditkin.com
laiteam@arnolditkin.com
e-service@arnolditkin.com

*Plaintiff's Attorneys*

**EXHIBIT B**

**MASTER SERVICE AGREEMENT**  - As it pertains to transportation/trucking

This **MASTER SERVICE AGREEMENT** ("Agreement") is made and entered into as of
April 19 , 2017 by and between the parties herein designated as "Company" and
"Contractor":

Company:     U.S. Well Services, LLC
Address:     770 South Post Oak Lane, Suite 410
              Houston, TX  77056

Contractor:    Acme Truck Line, Inc.
Address:     200 Westbank Expressway
             Gretna, LA  70053

**IN CONSIDERATION** of the mutual promises, changes conditions and agreements herein
contained, the sufficiency of which is hereby acknowledged, and the specifications and special
provisions set forth in the exhibits attached hereto and made a part hereof, the parties hereto
mutually agree as follows:

**1.0     AGREEMENT AND TERM**

      1.1     <u>Nature of Services</u>. Company hereby engages Contractor to perform services
            ("<u>Services</u>"), as from time to time requested by Company with or without a written
            work order ("<u>Work Order</u>"). Contractor shall, at all times, faithfully, with due
            diligence and to the best of Contractor's ability, experience and talent, perform
            the Services. Contractor will not accept or agree to perform any Services
            hereunder that Contractor is not fully capable, licensed, experienced and qualified
            to perform. This Agreement shall control and govern all Services performed by
            Contractor for Company under subsequent Work Orders. Agreements or
            stipulations in any such Work Order or other instrument used by Contractor that is
            not in conformity with the terms and provisions hereof shall be null and void. No
            waiver by Company of any of the terms, provisions or conditions hereof shall be
            effective unless said waiver shall be in writing and signed by an authorized
            officer or manager of Company. This Agreement does not obligate Company
            to request services from Contractor nor does it obligate Contractor to accept orders
            for service from Company. Further, Company shall have the right to engage other
            persons, firms or entities to perform the same or similar Services as requested
            hereunder.

      1.2     <u>Term</u>. This Agreement shall remain in force and effect as long as
            Contractor's Certificate of Insurance remains in effect and the Rate Schedule is
            current or until canceled by either party by giving the other party thirty (30) days'
            notice in writing at the respective address of either party; provided, however, that
            notwithstanding anything stated in this Agreement to the contrary, all release,
            defense, and indemnity provisions hereof shall survive the termination or
            expiration of this Agreement, without limit in time, except time limits imposed by

1

Contractor Initials _KF_   USWS _SoS_

**EXHIBIT B**

the applicable statutes of limitation or prescriptive periods. Termination of this Agreement shall not terminate any of the parties' rights and obligations under Work Orders issued prior to the effective date of the termination of this Agreement and this Agreement shall remain in full force and effect, and continue to control and govern all Services under all outstanding Work Orders for the duration of the Services thereunder. Termination of this Agreement, shall not relieve any party of is respective liability arising from or incident to Services performed under this Agreement, or breach of any of the terms hereof, prior to the effective date of the termination of this Agreement. Company, in its sole discretion, may terminate any Work Order issued hereunder and cease the prescribed Services whether or not such Service that has commenced at any time upon written notice to Contractor, subject only to Company's obligation to pay for such Service that has actually been performed as of the date of any such termination.

## 2.0    CONDUCT OF WORK

2.1    Contractor represents and warrants that it is qualified (including, without limitation, holding all requisite licenses) and experienced to perform the Services requested hereunder. Contractor represents and warrants that it owns or has the right to use any and all equipment, tools, materials, computer software or hardware, data, trade secrets and know-how used by Contractor in connection with Services provided to Company. Contractor represents and warrants that such use does not violate or infringe on any patents issued or applied for or on licenses of other parties. Contractor further represents and warrants that such use does not constitute, directly or indirectly, the theft or misappropriation of any third parties' trade secrets. Contractor agrees to indemnify, Defend, and hold harmless Company from any and all claims, demands, and causes of action of every kind and character in favor of or made by a patentee, licensee, or claimant of any rights or priority to such tool or equipment or the use or construction thereof, that may result from or arise out of furnishing or using any such tool or equipment by Contractor in connection with the Services, or that otherwise arise from or are related to any breach of the foregoing representations and warranties.

2.2    Contractor warrants and guarantees to Company that all equipment, materials, labor, workmanship, other services and other items furnished under this Agreement shall be of a quality currently acceptable in the trade, conform with any of Company's requirements, and be free from defective workmanship and defects. Contractor also guarantees that the Services shall conform with the plans, specifications and drawings, if any, relating to the Services. Contractor shall commence the Services at the time specified by Company and continue to diligently perform the Services without delay, in a safe, good and workmanlike manner, in strict conformity with the specifications and requirements contained in the Work Order. The foregoing warranty shall apply to all claims of which Company gives notice to Contractor within 12 months following the completion of the Services hereunder. Contractor shall at its sole cost and expense make such

Contractor Initials  _KF_  USWS _SS_

**EXHIBIT B**

repairs and/or replacements as may be necessary to remedy any such defects. If Contractor fails to so repair or replace any such defects in a timely manner, Company may do so and Contractor shall reimburse Company for any costs relating thereto. Contractor shall obtain warranties of the type standard in the industry on all goods purchased from third parties, if any, and Contractor shall promptly assign such warranties to Company.

2.3     Contractor shall comply with all federal, state, and local laws, ordinances, and regulations affecting the Services to be performed under this Agreement.

2.4     Contractor shall dispose of all waste materials, including, but not limited to, water, salt water, brine, or other waste materials, off-site, unless otherwise directed in writing by Company, and in compliance with all applicable laws, regulations, and judicial and/or administrative orders. Further, upon Contractor receiving any brine, flow back fluid, or other agreed upon fluid or substance, Contractor hereby assumes all obligations and liabilities of any kind or characteristic in respect of ownership, handling, storage, or disposal of such aforementioned fluids or substances to be transported and/or disposed of by Contractor.

## 3.0     INDEPENDENT RELATIONSHIP

In the performance of any Services by Contractor for Company, Contractor shall be deemed to be an independent contractor, with the authority and right to direct and control all of the details of the Services, Company being interested only in the results obtained. However, all Services shall meet the approval of Company and shall be subject to the general right of inspection. Company shall have no right or authority to supervise or give instructions to the employees, agents, or representatives of Contractor, and such employees, agents, or representatives at all times shall be under the direct and sole supervision and control of Contractor. Any suggestions, advice or directions given by Company or its employees to Contractor or its employees shall in no way establish or be evidence of an intent to create a master and servant or principal and agent relationship between Company and Contractor. It is the understanding and intention of the parties hereto that no relationship of master and servant or principal and agent shall exist between Company and the employees, agents, or representatives of Contractor, and that all Services covered hereby shall be performed at the sole risk of Contractor.

## 4.0     COMPENSATION

4.1     <u>Compensation</u>. The full compensation due Contractor shall be as specified on the most recent, submitted and approved Rate Schedule attached hereto as <u>Exhibit A</u>, unless alternate arrangements have been submitted and mutually agreed to by Company and Contractor in writing, and shall be inclusive of all labor, equipment, materials, supplies, tools, and supervision provided by Contractor and all other expenses incurred by Contractor.

4.2     <u>Payment Procedure</u>. Contractor shall keep and maintain daily time sheets and invoices relating to all Services performed hereunder. Company shall have the

**EXHIBIT B**

right, at all times, to review and audit all of Contractor's time sheets and invoices related to the Services. All daily time sheets for labor, and invoices for materials and equipment must be approved daily by a Company representative. Based upon the time sheets and invoices, and in accordance with the Rate Schedule attached as <u>Exhibit A</u>, Contractor shall submit a monthly statement and supporting documentation that the Company may reasonably request, including without limitation, lien waivers from subcontractors and from suppliers that delivered materials directly to the site where the Services are performed, and documentation establishing that the percentage of the Services represented on the Application for Payment has been completed in full compliance with this Agreement. Such invoice shall specify the plant and/or facilities for which the Services was performed or rendered. The Company will review the Contractor's Applications for Payment and will promptly approve them or else indicate, in writing, items of disapproval and approve all other items. In taking action on the Contractor's Applications for Payment, the Company shall be entitled to rely on the accuracy and completeness of the information furnished by the Contractor and shall not be deemed to represent that it has made audits of the supporting data or any examination to ascertain how or for what purposes the Contractor has used the monies previously paid under this Agreement.

4.3     <u>Payment</u>. Company shall pay Contractor all undisputed invoiced amounts within 60 days of receipt of Contractor's invoice.

**5.0    INDEMNITY**

5.1     It is agreed by both Company and Contractor that certain responsibilities and liabilities for personal injuries, bodily injuries, death and property damage arising out of the performance of this Agreement should be allocated between them in order to avoid protracted litigation. Such sums shall be allocated between Company and Contractor, along with the associated legal expenses, and insurance may be arranged by each party as necessary to protect them against these exposures to loss. The following sets out the specifics of the agreements between Company and Contractor as to the allocation of the responsibilities and liabilities.

5.2     <u>Definitions</u>.

     a.     "<u>Company Group</u>" shall mean, individually or in any combination, Company, its parent, affiliate, and subsidiary entities, its and their joint venturers, joint interest owners, partners, co-owners, co-lessees, contractors and subcontractors of any tier (other than Contractor Group) and the respective directors, officers, agents, independent contractors, representatives, employees and invitees of all of the foregoing.

     b.     "<u>Contractor Group</u>" shall mean, individually or in any combination, Contractor, its parent, affiliate, and subsidiary entities, and

       Contractor Initials _KF_   USWS _SB_

**EXHIBIT B**

subcontractors of any tier, and each of their respective directors, officers, agents, independent contractors, representatives, employees and invitees.

c.    "<u>Customer</u>" shall mean the entity which has retained Company to provide services.

d.    "<u>Defend</u>" shall mean the obligation of the indemnitor at the indemnitees' election (i) to defend the indemnitees at the indemnitor's sole expense or (ii) to reimburse the indemnitees for the indemnitees' reasonable expenses incurred in defending themselves. Notwithstanding the indemnitees' election of option (i) above, the indemnitees shall be entitled to participate in their defense at the indemnitee's sole cost. All obligations to defend shall include the obligation to reimburse the indemnitee for its reasonable expenses incurred in enforcing the indemnity, release, or protection obligations of this Agreement.

e.    "<u>Losses</u>" shall mean any and all claims, demands, causes of action, legal proceedings, settlements, losses, liabilities (INCLUDING CONTRACTUAL LIABILITIES), fines, penalties, indemnity obligations, costs, damages or expenses of any kind and character (including attorney's fees and other legal expenses and punitive, exemplary and the multiplied portion of multiplied damages).

f.    "**<u>REGARDLESS OF FAULT</u>**" SHALL MEAN WITHOUT REGARD TO THE CAUSE(S) THEREOF INCLUDING, WITHOUT LIMITATION, PRE-EXISTING CONDITIONS, WHETHER SUCH CONDITIONS BE PATENT OR LATENT, THE UNSEAWORTHINESS OF ANY VESSEL OR VESSELS, IMPERFECTION OF MATERIAL, DEFECT OR FAILURE OF EQUIPMENT, BREACH OF REPRESENTATION OR WARRANTY (EXPRESS OR IMPLIED), ULTRAHAZARDOUS ACTIVITY, STRICT LIABILITY, TORT, BREACH OF CONTRACT, BREACH OF STATUTORY DUTY, BREACH OF ANY SAFETY REQUIREMENT OR REGULATION, OR THE NEGLIGENCE OR FAULT OF ANY PERSON OR PARTY, EXPRESSLY INCLUDING THE INDEMNITEE, WHETHER SUCH NEGLIGENCE BE SOLE, JOINT AND/OR CONCURRENT, ACTIVE OR PASSIVE, OR ANY OTHER THEORY OF LEGAL LIABILITY, BUT EXPRESSLY NOT INCLUDING GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THE INDEMNITEE.

5.3    Contractor shall release, Defend, and indemnify Company Group from and against all Losses arising in connection herewith in favor of any member of Contractor Group on account of bodily injury, death, or damage to property, **REGARDLESS OF FAULT**.

5.4    Company shall release, Defend, and indemnify Contractor Group from and against all Losses arising in connection herewith in favor of any member of

Revised 01/03/17jc                                                    Contractor Initials _KF_   USWS _SWS_

Company Group on account of bodily injury, death or damage to property, **REGARDLESS OF FAULT**.

5.5     Contractor agrees to release, Defend, and indemnify Company Group from and against all Losses arising from the acts of Contractor in favor of third parties, on account of bodily injury, death, personal injury, or damage to property suffered by any third parties, including pollution and/or contamination and the clean up or remediation of such.

5.6     Company agrees to release, Defend, and indemnify Contractor Group from and against all Losses arising from the acts of Company in favor of third parties, on account of bodily injury, death, personal injury, or damage to property suffered by any third parties, including pollution and/or contamination and the clean up or remediation of such.

5.7     Each party shall notify the other party immediately of any claim, demand, or suit that may be presented to or served upon it by any party arising out of or as a result of Services performed pursuant hereto, affording such other party full opportunity to assume the defense of such claim, demand or suit and to protect itself under the obligations of this indemnity section of the Agreement.

5.8     For claims indemnified under this Article made against any person or entity by an employee of the Contractor or Company, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under this Section shall not be limited by or to the amount or type of damages, compensation or benefits payable by or for the indemnitor under Workers' Compensation acts, disability benefit acts or other employee benefit acts.

5.9     The release, indemnity, and Defend provisions of this Agreement shall apply to any and all Services, work performed, services rendered or material supplied by Contractor on behalf of Company.  This shall be broadly construed to include, but not be limited to, not only Services, but also any occurrences at the work site, including the loading and unloading of cargo, transportation to and from the work site, the ingress and egress of all persons, breaks of all kinds, including, without limitation, breaks for meals and/or rest, horseplay of all kinds, or volunteering of all kinds to assist others in their operations or work.

5.10    Contractor shall be liable at all times for damages to or destruction of Contractor's equipment and materials, **REGARDLESS OF FAULT**. Company shall be under no liability to reimburse Contractor for any such loss or damage thereto and Contractor waive any rights of recovery or subrogation against Company Group for such damage or destruction.

5.11    The indemnity obligations under this Agreement shall be supported by insurance obtained for the benefit of the other party and its respective Group with minimum limits and coverages not less than those required to be obtained pursuant to

Revised 01/03/17jc                                        Contractor Initials____*KF*____USWS____

Article 6.0 and <u>Exhibit B</u>. The parties agree that their indemnity obligations hereunder are not intended to be limited by any insurance requirements and that the insurance requirements and the indemnity provisions shall be separate and distinct obligations and shall be separately and independently enforceable.

5.12 Neither party shall be liable to the other for consequential, incidental, punitive, exemplary or indirect damages, lost profits or other business interruption damages, by statute, in tort or contract, except to the extent that such damages are awarded to a third party with respect to which a party hereunder has an indemnity obligation, **REGARDLESS OF FAULT**. Provided, however, this Section 5.12, shall not limit any claims arising out of Article 7.0.

5.13 ALL OF CONTRACTOR'S INSURANCE OBLIGATIONS, WARRANTIES, INDEMNITIES, DEFEND OBLIGATIONS, AND RELEASES IN THIS AGREEMENT SHALL EXTEND NOT ONLY TO COMPANY, BUT SHALL ALSO EXTEND TO THE CUSTOMER AND ITS CO-OWNERS, CO-VENTURERS, CO-LESSEES, FARMORS, FARMEES, PARTNERS, AND JOINT OWNERS AND THEIR CONTRACTORS AND SUBCONTRACTORS OF EVERY TIER AND ITS AND THEIR RESPECTIVE EMPLOYEES, SHAREHOLDERS, AGENTS, REPRESENTATIVES, CONSULTANTS, INDEPENDENT CONTRACTORS, AND INVITEES ("CUSTOMER GROUP").

## 6.0 INSURANCE

At any and all times during the term of this Contract, to support the liability and indemnification provisions in this Agreement, but as a separate and independent obligation, Contractor shall maintain, with an insurance company or companies authorized to do business in the state where the Services are to be performed, insurance coverage of the kind, in the minimum amounts, and under the terms required by Company on the Required Limits of Insurance attached hereto, marked <u>Exhibit B</u> and shall provide evidence of such insurance coverage by furnishing to Company a Certificate of Insurance. The provisions of this Article 6.0 shall in no way limit any indemnity obligations of Contractor or Company, and the limits and coverages of any insurance obtained by either party shall in no way limit the liabilities or obligations assumed by such party pursuant to this Agreement.

6.1 If Contractor is a sole proprietor, Contractor must make the following election:

_____ I elect to be excluded from Workers' Compensation coverage as a Sole Proprietor under state law. I further certify that I will provide an insurance certificate evidencing Workers' Compensation insurance should I hire other parties to perform any services on my behalf for Company.

_____ I elect to be covered under Workers' Compensation insurance as a Sole Proprietor. A Certificate of Insurance evidencing Workers' Compensation coverage is attached.

Revised 01/03/17jc

Contractor Initials _KF_ USWS _Sw_

**EXHIBIT B**

## 7.0   NON-DISCLOSURE

Contractor recognizes and acknowledges that the Company's proprietary or confidential information relating to the projects for which Contractor may provide services hereunder, including, but not limited to, financial information and information pertaining to the Company's prospects, operations, business plans, practices and projects used by the Company in its business or developed by Contractor in performing its services under this Agreement (hereafter "Confidential Information") are valuable and unique assets of the Company. Contractor will not disclose Confidential Information to any person, firm, corporation, association or other entity for any reason or purpose whatsoever without the prior written consent or authorization of Company, during the full term of this Agreement and for a period of three (3) years after the expiration or termination of this Agreement. Upon termination of Contractor's services hereunder, Contractor shall neither take nor retain any Confidential Information or copies thereof without approval of Company.

## 8.0   TAXES AND CLAIMS

8.1   Contractor agrees to pay all taxes, licenses, and fees levied or assessed on Contractor in connection with or incidental to the performance of the Agreement by any governmental agency.

8.2   Contractor agrees to pay all claims for labor, materials, services, and supplies furnished by Contractor hereunder and agrees to allow no lien or charge to be fixed upon property of Company. Contractor agrees to indemnify and Defend Company from and against all such claims or indebtedness incurred by Contractor in connection with the services as provided hereunder. It is agreed that Company shall have the right to pay any such claims or indebtedness out of any money due or to become due to Contractor hereunder.

8.3   Before payments are made by Company to Contractor, Company may require Contractor to furnish proof that there are no unsatisfied claims for labor, materials, equipment and supplies or for injuries to persons or property not covered by insurance.

## 9.0   AUDIT

Company shall have the right to audit Contractor's books and records relating to all invoices issued and all expenses incurred pursuant to this Agreement.

## 10.0   SAFETY, HEALTH & ACCIDENT PREVENTION

Contractors and subcontractors have an express responsibility for the establishment of an effective safety program to prevent exposures to hazardous, unsanitary, or unhealthy working conditions, per OSHA, EPA, DOT or other related codes. Clear communication of Company's safety expectations is required to assure that all contractors understand their safety obligations as mandated by government regulations and company policies.

8

**EXHIBIT B**

Listed below are the Company's requirements for outside Contractor's management of project safety:

10.1 Contractor shall adhere strictly to all local, state, OSHA, EPA & DOT regulations.

10.2 Contractor shall adhere to all Company General Contractor Safety Rules, from time to time furnished to Contractor, as well as "site-specific" safety requirements.

10.3 Company officials are not responsible for Contractor's compliance with any applicable safety requirements, but are empowered to stop any activities of Contractor that are considered non-compliant or dangerous.

10.4 Contractor understands that Company maintains a drug free workplace as required by law. Contractor agrees that any failure to comply with Company's standards, policies, and procedures for maintaining a drug-free workplace is a material breach of this Agreement and constitutes grounds for immediate termination of this Agreement by Company.

10.5 Contractor is to provide Company with verification that their employees are properly qualified to perform specialized job tasks, i.e., mobile equipment operators, welders, electricians, etc. Verification may be provided by certifications/licenses or training records.

10.6 Contractor is required to obtain authorization/permits from Company before performance of hot-work, confined space entry, excavation, trenching, crane operations, utility tie-ins or process line breaks.

10.7 Contractor shall ensure that all of its employees or other personnel designated by Contractor to provide any portions of the services hereunder are medically and physically fit to perform job tasks and that performance of job tasks will not exacerbate any existing physical or mental health problems or subject them or any other persons to inordinate or undue health or safety risks.

## 11.0   MISCELLANEOUS

11.1 <u>Assignment</u>. This Agreement may not be assigned or sub-let by Contractor in whole or in part without the prior written consent of Company.

11.2 <u>Modification and Waiver</u>. No supplement, modification or amendment of this Agreement shall be binding unless executed in writing by both parties hereto. No benefit, right, or duty provided by this Agreement shall be deemed waived unless the waiver is reduced to writing, expressly refers to this Agreement, and is signed by a duly authorized representative of the party charged with the waiver. The waiver of one instance of any act, omission, condition, or requirement shall not

Contractor Initials _KF_ USWS _SoS_

**EXHIBIT B**

constitute a continuing waiver unless specifically so stated in the aforesaid written waiver instrument. Further, a waiver by either party of any one or more defaults by the other hereunder shall not operate as a waiver of any other defaults (whether past or future) whether of a like or of a different character.

11.3 Notices. All notices, requests, directions or other communications permitted or required to be delivered hereunder shall be in writing and shall be delivered to the appropriate party at the addresses above. Notice sent by personal delivery to the authorized representative designated by a party shall be effective on the date of such delivery. Notice sent by properly addressed mail, certified or registered with return receipt requested and postage pre-paid shall be effective three (3) days after being deposited in the U.S. mail. Notice sent by telegraph, telex or cable, charges pre-paid and confirmed by copy thereof sent by registered or certified mail shall be effective upon the date of such telegraph, telex, or cable. Notice sent in any other manner shall be effective only if and when received and acknowledged by the recipient party.

11.4 No Authority to Bind Company. Contractor understands and agrees that Contractor has no authority, and shall not represent that it has authority, to bind Company to any contract, agreement or similar obligations.

11.5 Agreement. This Agreement shall be binding upon and shall inure to the benefit of the successors and permitted assignees of parties.

11.6 Entire Agreement; Conflicts. This Agreement contains the entire agreement between the parties with respect to the subject matter hereof and supersedes any and all prior understandings, agreements or correspondence between the parties, whether written or oral. In the event of a conflict between any provision of this Agreement, on the one hand, and any field ticket, Work Order, invoice, statement or any other document, on the other hand, the provisions of this Agreement shall control.

11.7 Choice of Law. THIS AGREEMENT AND THE LEGAL RELATIONSHIP BETWEEN THE PARTIES SHALL BE INTERPRETED AND ENFORCED IN ACCORDANCE THE LAWS OF THE STATE OF TEXAS, WITHOUT REGARD TO CONFLICTS-OF-LAWS PROVISIONS THAT WOULD REQUIRE THE APPLICATION OF ANY OTHER LAW.

11.8 Severability. If in any legal proceedings a competent tribunal, including, but not limited to, judicial courts or arbitration tribunals, shall refuse to enforce any provision of this Agreement, the scope of such unenforceable provision shall be deemed modified and diminished only to the extent necessary to render the provision valid and enforceable while still maintaining to the extent possible the intent of the parties with respect to such provision. In any event, the validity or enforceability of any provision shall not affect any other provision of this Agreement.

Contractor Initials _KF_ USWS _SS_

**EXHIBIT B**

11.9   <u>Construction of Agreement</u>.  In construing this Agreement no consideration shall be given to the captions of the articles, sections, subsections, or clauses, which are inserted for convenience in locating the provisions of this Agreement and not as an aid in its construction.  A defined term has its defined meaning throughout this Agreement and each exhibit to this Agreement regardless of whether it appears before or after the place where it is defined.  The plural shall be deemed to include the singular, and vice versa and each gender shall be deemed to include the other genders. It is expressly agreed by the parties that this Agreement shall not be construed against any party hereto, and no consideration shall be given or presumption made, on the basis of who drafted this Agreement.

11.10  <u>Counterparts</u>. This Agreement may be executed in multiple originals, each of which shall together constitute but one and the same instrument.

11.11  <u>Force Majeure</u>.  Except with regard to indemnity obligations and payment obligations hereunder, neither party shall be liable in damages to the other for any act, omission, or circumstances occasioned by or in consequence of any blockades, sabotage, wars, acts of terror, insurrections, riots, epidemics, Weather Events, restraint of rulers and peoples, civil disturbances, terrorist activities, explosions, strikes (other than strikes relating to the party's employees), lockouts, work stoppages, delays in action of federal, state, or local government or any agency thereof, the order of any court or governmental authority having jurisdiction, or any other cause, whether of the kind herein enumerated or otherwise, that is not reasonably within the control of the party claiming suspension and which by the exercise of due diligence such party is unable to prevent or overcome (any such event, "<u>Force Majeure</u>").  For the avoidance of doubt, any delay or inability of Contractor to obtain, timely obtain, or obtain at a reasonable cost any equipment, fuel, labor, or permits or other governmental approvals customarily required to perform the Services shall not be deemed to be Force Majeure.  Any Force Majeure event affecting the performance under this Agreement by either party, however, shall not relieve either party of liability in the event of its concurrent negligence or in the event of its failure to use due diligence to remedy the situation and to remove the cause, to the extent damage results therefrom, in an adequate manner and with all reasonable dispatch.  For purposes of this Agreement, "<u>Weather Event</u>" means flood, washouts, landslides, mudslides, earthquakes, storms, tornadoes, hurricanes and tropical storms or threat of such.

Revised 01/03/17jc                                Contractor Initials _KF_   USWS _SV_

**12.0   EXHIBITS**

The following Exhibits are attached hereto and are made a part of this Agreement for all
purposes:

|  |  |  |
|---|---|---|
| Exhibit A | --- | Rate Schedule |
| Exhibit B | --- | Required Limits of Insurance |
| Exhibit C | --- | Contractor's Certificates of Insurance |

*[Signature Page Follows]*

Contractor Initials *KF*    USWS

**EXHIBIT B**

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement upon the date shown in several counterparts, each of which shall be considered as an original.

**Contractor Name:**

Acme Truck Line, Inc.

Signature: _K. Foster_

Printed Name Kimberly Foster

Title: CFO

Date: April 19, 2017

**Company Name:**

U.S. Well Services, LLC

Signature: _Scott Williams_

Printed Name: Scott Williams

Title: Director of Procurement

Date: _____

Signature: _____

Printed Name: Nathan Houston

Title: Chief Executive Officer

Date: _____

Signature Page to Master Service Agreement

KF

**EXHIBIT B**

**EXHIBIT A**
**RATE SCHEDULE**

*KF*

EXHIBIT B

## EXHIBIT B
## REQUIRED LIMITS OF INSURANCE

**Contractor:**                              **Category:**


### INSURANCE CLASSIFICATION AND LIMITS

| Basic Required Minimum Insurance Coverage and limits | | | | | | |
|---|---|---|---|---|---|---|
| **Required Coverage** | **Addl Insured**[1] | **Waiver Subro**[2] | **Category 1** | **Category 2** | **Category 3** | **Category 4** |
| Worker's Compensation | | X | Statutory | Statutory | Statutory | Statutory |
| Employer's Liability | | X | 100,000 | 500,000 | 1,000,000 | 1,000,000 |
| Automobile Liability | X | X | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 |
| General Liability (including Products & Completed Operations) | X | X | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 |
| Excess/Umbrella Liability | X | X | 1,000,000 | 2,000,000 | 5,000,000 | 10,000,000 |

| Additional Required Coverage when used in Operations – Applicable to all Categories | | | |
|---|---|---|---|
| Aircraft Liability - owned and/or non-owned - $10,000,000 | X | X | |
| Vessel Liability - owned and/or non-owned - $10,000,000 | X | X | |

Sole Proprietors
Provide either a certificate of non-coverage or certificate of election to be excluded from
Workers' Compensation or a Certificate of Insurance for Workers' Compensation coverage
evidencing the Sole Proprietor election.

NOTE: Certificates must state that insurance shall not be canceled without thirty
(30) days prior written notice to Company.

---

[1] Any policy for which "Waiver Subro" applies shall mean that such policy shall
contain a waiver of subrogation endorsement that waive any rights of recovery or
subrogation against Company Group and its insurers with respect to the work and
services performed under the Agreement to which this Exhibit is attached.


[2] Any policy for which "Addl Insured" applies shall mean the Company Group shall
be named an additional insured under such policy, to the extent of the liabilities
assumed under this Agreement, and shall further provide that such coverage shall be
primary to any insurance purchased or maintained by any member of the Company
Group as to the work and services performed under the Agreement to which this
Exhibit is attached.

KF

**EXHIBIT B**

Contractor shall require all subcontractors engaged in operations under this Agreement to comply with and maintain insurance of the types and in the minimum amounts required above for Contractor.

In addition, all such endorsements and requirements shall extend to Customer Group.

**Category 1: Contractor Activities – Minimum limits as defined above**

| | |
|---|---|
| Carpenters | Non-Hazardous Waste Haulers |
| Cleaning Services | Other Construction |
| Delivery Services | Surveyors |
| Landmen | |

**Category 2: Contractor Activities – Minimum limits as defined above**

| | |
|---|---|
| Anchor Testing | Saltwater Disposal Facilities |
| Chemical Vendors | Tubular Inspections |
| Gas Measurement | Sand Hauling and Vacuum Trucks |
| Painting Contactors | Welding (other than processing or hot tap) |
| Roustabouts, Mechanics | Water Well Site Contact Consultants |
| Safety Personnel | *Activities not otherwise classified |

**Category 3: Contractor Activities – Minimum limits as defined above**

Backhoe, Crane Operators, Excavation Services

| | |
|---|---|
| Casing Crews | Hot Oil/Steamer Services |
| Cement Services | Logging (All types) |
| Contract Pumpers | Seismic Contractors |
| General Contractors | Welding (Process Welding) |

Specialty Contractors (AEP, Foxboro Fisher Delta V, etc.)

**Category 4: Contractor Activities - Minimum limits as defined above**

| | |
|---|---|
| Cased Hole Services, Perforating | Logging (All types) |
| Completion Rigs | Pipeline Construction, Repairs |
| Compression | Trucking – Oil, Fuel, Hazardous Waste |
| Drilling Contractors | Trucking – Winch, Rig Moves, Heavy Equipment |
| Downhole Wireline/ Services | Welding (Hot Traps) |
| Fracture, Stimulation, Pumping | Hazardous Waste Disposal Facilities |
| Hot Shot | |

3204837v4

*KF*

**EXHIBIT B**

**U.S. Well Services LLC**
**Revised Insurance Requirements**
**May 6, 2016**

**The following apply to all policies:**
1. Company Group shall be included as additional assured for both on-going and completed operations on all policies (except Workers' Compensation and Professional Liability coverages).
2. All policies will contain a Waiver of Subrogation in favor of Company Group.
3. Thirty (30) days notice to Company of cancellation or any material change.

Coverage under all insurance required to be carrier by Contractor (including its subcontractors) will be primary insurance and non-contributing of any other existing valid and collectible insurance, except for Workers Compensation and Professional Liability policies.

**A. Workers' Compensation and Employers Liability, to include:**
1. Statutory Workers' Compensation for state of hire/operation
2. Employers Liability
3. Other States Endorsement
4. ~~Alternate Employer~~

**\*\*If over Water, to include:**
1. \*\*Maritime Employers Liability including Transportation, Wages, Maintenance and Cure.
2. \*\*In Rem endorsement
3. \*\*Death on the High Seas Act

**B. Comprehensive General Liability (ISO Form CG2010 11/85 or equivalent) to include:**
1. Premises/Operations
2. Independent Contractors
3. Personal Injury
4. Products/Completed Operations
5. Contractual Liability
6. Explosion, Collapse, and Underground Damage  (As required)
7. Pollution Liability (Hazardous & Non-Hazardous)
8. Action Over Indemnity
9. Riggers Liability (As required)

**\*\*If Overwater, to include:**

*KF*

**EXHIBIT B**

    10. Non-owned Watercraft coverage without restrictions to operations and contractual liability.
    11. "In Rem" Endorsement

**C.** **Comprehensive Automobile Liability, to include:**
    1.  Owned, Hired, and Non-owned automobile liability
    2.  Broadened Transportation Pollution Liability Hazardous & Non-Hazardous (As required)
    3.  MCS-90 Endorsement (As required)
    4.  DOT Number to move equipment (As required)
    5.  Complete US Well's DVIR (As required)
    6.  HazMat Transportation coverage including Hazardous materials (As required)

**D.** **Professional Liability (As required)**

**E.** **Motor Truck Cargo (As required)**

**F.** **Umbrella/Excess Liability:** **(Occurrence Form) excess of:**
Following Terms and Conditions of below underlying coverages:
    1.  Employer's Liability
    2.  Maritime Employer's Liability (As required)
    3.  Comprehensive General Liability
    4.  Comprehensive Automobile Liability
    5.  Professional Liability (As required)

## INSURANCE CLASSIFICATION AND LIMITS
### BASIC REQUIRED MINIMUM INSURANCE COVERAGE AND LIMITS

| Required Coverage | Add'l Insured | Waiver of Subro | Category 1 | Category 2 | Category 3 | Category 4 |
|---|---|---|---|---|---|---|
| Worker's Compensation | | X | Statutory | Statutory | Statutory | Statutory |
| Employer's Liability | | X | $1,000,000 | $1,000,000 | $1,000,000 | $1,000,000 |
| Automobile Liability | X | X | $1,000,000 | $1,000,000 | $1,000,000 | $1,000,000 |
| General Liability Occ. | X | X | $1,000,000 | $1,000,000 | $1,000,000 | $1,000,000 |
| General Liability Agg | X | X | $2,000,000 | $2,000,000 | $2,000,000 | $2,000,000 |
| Professional Liab per claim | | X | $1,000,000 | $1,000,000 | $1,000,000 | $1,000,000 |
| Professional Liab Aggregate | | X | $2,000,000 | $2,000,000 | $2,000,000 | $2,000,000 |
| Motor Truck Cargo | | X | $1,000,000 | $1,000,000 | $1,000,000 | $1,000,000 |
| Excess/Umbrella Liab | X | X | $1,000,000 | $2,000,000 | $5,000,000 | $10,000,000 |
| Aircraft Liability | X | X | $10,000,000 | $10,000,000 | $10,000,000 | $10,000,000 |

Contractor shall carry during the progress of the term of the agreement insurance  issued by insurers that have a minimum rating in AM Best of A – VII.   Company reserves the right to

*KF*

**EXHIBIT B**

require certified copies of any or all policies.  The above minimum insurance requirements are subject to change at the discretion of Company.

Sole Proprietors
Provide-either a certificate of non-coverage or certificate of election to be excluded from Workers' Compensation or a Certificate of Insurance for Workers' Compensation coverage evidencing the Sole Proprietor election.

NOTE: Certificates must state that insurance shall not be canceled without thirty (30) days prior written notice to Company.

---

[1] Any policy for which "Waiver Subro" applies shall mean that such policy shall contain a waiver of subrogation endorsement that waive any rights of recovery or subrogation against Company Group and its insurers with respect to the work and services performed under the Agreement to which this Exhibit is attached.

[2] Any policy for which "Addl Insured" applies shall mean the Company Group shall be named an additional insured under such policy, to the extent of the liabilities assumed under this Agreement, and shall further provide that such coverage shall be primary to any insurance purchased or maintained by any member of the Company Group as to the work and services performed under the Agreement to which this Exhibit is attached.

3204837v4

*KF*

**EXHIBIT B**

**EXHIBIT C**
**CONTRACTOR'S CERTIFICATE OF INSURANCE**

3204837v4